## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | |
|---|---|
| LISA CLAYTON, LEONARIA BUTLER and ANNETTE LIFSEY<br><br>          Plaintiffs,<br>     v.<br><br>MACY'S CORPORATE SERVICES, INC.<br><br>          Defendant. | Case No. 5:17-cv-751<br><br>**PLAINTIFFS' ORIGINAL COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

LISA CLAYTON, LEONARIA BUTLER and ANNETTE LIFSEY ("Plaintiffs") bring this action against Defendant, MACY'S CORPORATE SERVICES, INC. ("Defendant" or "Macy's"), to stop Defendant's practice of making illegal debt collection calls to the cellular telephones of Plaintiffs and to obtain redress for injuries caused by Defendant's conduct. Plaintiffs, for their Complaint, allege as follows upon personal knowledge as to themselves and their own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by their attorneys.

### INTRODUCTION

1.      "The right to be let alone is indeed the beginning of all freedom."[1]  Plaintiffs bring this action pursuant to the Telephone Consumer Protection Act, 47 U.S.C. § 227 (the "TCPA").

2.      Defendant is a national retailer that engages in reckless and aggressive debt collection practices which outright ignore controlling federal law, and the rights of the called parties.

---

[1] *Public Utilities Commission v. Pollak*, 343 U.S. 451, 467 (1952) (Douglas, J., dissenting).

3.      Defendant repeatedly made unsolicited calls to Plaintiffs' cellular telephones in violation of the TCPA.  Defendant made the unauthorized and illegal calls to Plaintiffs' cell phones using an automatic telephone dialing system ("ATDS") or pre-recorded voice for the purpose of bullying Plaintiffs into paying an allegedly deficient balance.  Defendant also called Plaintiffs after they clearly stated they did not wish to be called again.

## PARTIES

4.      Plaintiff, LISA CLAYTON, is a natural person and citizen of San Antonio, TX.

5.      Plaintiff, LEONARIA BUTLER, is a natural person and citizen of Desots, TX.

6.      Plaintiff, ANNETTE LIFSEY, is a natural person and citizen of Long Beach, CA.

7.      Defendant, MACY'S, is a corporation under the laws of the State, Ohio. Defendant maintains its principle office in Ohio and may be served with process by serving it's Registered Agent, Corporation Service Company, 50 West Broad Street, Suite 1330, Columbus, OH 43215.

## JURISDICTION & VENUE

8.      The Court has subject matter jurisdiction under 28 U.S.C. § 1331; this is a TCPA action.

9.      The Court has personal jurisdiction over Defendant.  Defendant has continuous and systematic contacts with this District through their telemarketing scheme and is essentially at home here. Defendant conducts significant, ongoing business in this District and purposefully availed itself to this District. The Court has specific personal jurisdiction over Defendant because it targets this District with its wrongful, accused acts, and/or emanated those acts from this District. The exercise of personal jurisdiction over Defendant in this District does not offend traditional notions of fair play or substantial justice.

2

10.     Venue is proper in this District under 28 U.S.C. § 1391(b); a substantial part of the wrongful conduct giving rise to this lawsuit occurred in, was directed to, and/or emanated from this District.

## LEGAL BASIS FOR THE CLAIMS

### The TCPA

11.     Congress enacted the TCPA in 1991 to address certain practices thought to be an invasion of consumer privacy and a risk to public safety. The TCPA and the Federal Communications Commission's ("FCC") implemented rules prohibit: (1) making telemarketing calls using an artificial or prerecorded voice to residential telephones without prior express consent; and (2) making any non-emergency call using an automatic telephone dialing system ("ATDS") or an artificial or prerecorded voice to a wireless telephone number without prior express consent.  If the call includes or introduces an advertisement, or constitutes telemarketing, consent must be in writing.[2]  Calls that include non-marketing messages require consent, but not written consent.  The TCPA grants consumers a private right of action, with a provision for $500 or the actual monetary loss in damages for each violation, whichever is greater, and treble damages for each willful or knowing violation, as well as injunctive relief.

12.     Since the TCPA's passage in 1991, the FCC has taken multiple actions implementing and interpreting the TCPA, and has issued numerous Declaratory Rulings clarifying specific aspects of the TCPA.  The most recent, FCC Omnibus Order of July 10, 2015, (the "Order") provided further protection to consumers by, among other things, clarifying that ATDS is broadly defined, confirming liability attaches to calls made to the wrong number or reassigned

---

[2] Prior express written consent means "an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered.  47 C.F.R. § 64.1200(f)(8).

number, and clarifying consumers may revoke consent through reasonable methods.  *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, FCC 15–72, 30 F.C.C.R. 7961, (July 10, 2015), available at https://www.fcc.gov/document/tcpa-omnibus-declaratory-ruling-and-order.  The Order defines an "autodialer" as equipment/software that has the future capacity to dial randomly or sequentially.  "In other words, the capacity of an autodialer is not limited to its current configuration but also includes its potential functionalities."  The Order clarifies the meaning of "capacity" and that "any call" made using a device with the capacity to serve as an ATDS requires consent under the TCPA, even if the caller is not "actually…using those functionalities to place calls" at the time.  *Derby v. AOL, Inc.*, No. 5:15-CV-00452-RMW, 2015 WL 5316403, at *3 (N.D. Cal. Sept. 11, 2015).

13.     The Order also states that calls placed to the wrong number or a reassigned number are made with knowledge of the error after the first call; and consumers may revoke consent through any reasonable method, including orally: "[w]e clarify, however, that callers who make calls without knowledge of reassignment and with a reasonable basis to believe that they have valid consent to make the call should be able to initiate one call after reassignment as an additional opportunity to gain actual or constructive knowledge of the reassignment and cease future calls to the new subscriber.  If this one additional call does not yield actual knowledge of reassignment, we deem the caller to have constructive knowledge of such;" "[c]onsumers generally may revoke, for example, by way of a consumer-initiated call, directly in response to a call initiated or made by a caller, or at an in-store bill payment location, among other possibilities."

14.     Furthermore, the TCPA established the National Do-Not-Call List, and also mandates all businesses that place calls for marketing purposes maintain an "internal" do-not-call list ("IDNC").  See 47 C.F.R. § 64.1200(d).  The IDNC is "a list of persons who request not to

receive telemarketing calls made by or on behalf of that [seller]." *Id*. The TCPA prohibits a company from calling individuals on its IDNC list or on the IDNC list of a seller on whose behalf the telemarketer calls, even if those individuals' phone numbers are not on the National Do-Not-Call Registry. *Id.* at § 64.1200(d)(3), (6). Any company, or someone on the company's behalf, who calls a member of the company IDNC is liable to that person under the TCPA. The called party is then entitled to bring a private action under the TCPA for monetary and injunctive relief.

15.     Finally, in 2008, the FCC held that "a creditor on whose behalf an autodialed or prerecorded message call is made to a wireless number bears the responsibility for any violation of the Commission's rules." In re Rules and Regulations Implementing the Telephone Consumer Protection Act, Declaratory Ruling on Motion by ACA International for Reconsideration, 23 FCC Rcd. 559, 565, ¶ 10 (Jan. 4, 2008); *Birchmeier v. Caribbean Cruise Line, Inc.*, 2012 WL 7062748 (Dec. 31, 2012).

16.     Accordingly, the entity can be liable under the TCPA for a call made on its behalf, even if the entity did not directly place the call. Under those circumstances, the entity is deemed to have initiated the call through the person or entity.

### FACTS APPLICABLE TO ALL PLAINTIFFS

17.     Defendant's debt collection campaign is a continuous course of conduct and a pattern of practice, conducted under a common policy or program. From at least 2015 and through 2016, Defendant engaged in an aggressive debt collection campaign ("Campaign") that targeted people across the nation. Plaintiffs were directly targeted by Defendant's Campaign.

18.     Although Plaintiffs may live in different states, they share similar factual bases for Defendant's liability – marketing/debt collection pitch; lack of consent; use of an auto-dialer;

targeting a cell phone; and loss of privacy, among others, all of which arise out of Defendant's Campaign.

## JOINDER

19.     Rule 20 of the Federal Rules of Civil Procedure provides, in part: (a) PERSONS WHO MAY JOIN OR BE JOINED.

20.     (1) Plaintiffs. Persons may join in one action as plaintiffs if:

> (A) they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and
>
> (B) any question of law or fact common to all plaintiffs will arise in the action. *See* Fed. R. Civ. P. 20(a).is Court has subject matter jurisdiction under 28 U.S.C. § 1331, as this action arises under the TCPA, which is a federal statute.

21.     "Under the [Federal] Rules, the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged." *See United Mineworkers of Am. V. Gibbs*, 383 U.S. 715, 724, 86 S. Ct. 1130, 1138 (1966).

22.     Rule 20 is "designed to permit the joinder of plaintiffs or defendants whenever there is a common question of law or fact and the right to relief arises out of a single transaction or occurrence or a series of transactions or occurrences." *Walker v. City of Houston*, 341 F. Supp. 1124, 1132 (S.D. Tex. 1971).

23.     A 'series of transactions or occurrences,' means some connection or logical relationship between various transactions or occurrences such as a 'nucleus of operative facts or

law.'" *Breidel v. Harris Cnty. Sheriff's Ofc.*, 2014 U.S. Dist. LEXIS 108542, *9 (S.D. Tex. Aug. 6, 2014); quoting *Hanley v. First Investors Corp.*, 151 F.R.D. 76, 79 (E.D. Tex. 1993). "Rule 20 is intended to be liberally construed in order to promote trial convenience." *Breidel*, 2014 U.S. *Dist. LEXIS, at *9; citing Walker*, 341 F. Supp., at 1132.

24.     "The common question need not predominate; that's a requirement for class actions; not for permissive joinder." *See Lee v. Cook County*, 635 F.3d 969, 971 (7th Cir. 2011); *Fidelity Nat'l Title Co. v. U.S. Small Bus. Admin.*, 2014 U.S. Dist. LEXIS 65380, *25 (E.D. Cal. May 12, 2014).

25.     Allegations of a "company-wide policy" that violates federal law have been held sufficient to establish that multiple plaintiffs' claims "arise out of the same series of transactions or occurrences." *See, e.g., Afabor v. RaceTrac Petroleum, Inc.*, 2006 U.S. Dist. LEXIS 33045, *11 (N.D. Tex. May 15, 2006); *citing King v. Ralston Purina Co.*, 97 F.R.D. 477 (W.D.N.C. 1983) ("Common sense says that claims alleged to be part of a 'pattern and practice' satisfy both the 'transaction' and the 'common question' requisites of Rule 20(a).").

### ALLEGATIONS OF FACT COMMON TO ALL PLAINTIFFS

26.     At all times relevant to this action, Macy's, collected consumer debts.

27.     Each Plaintiff is a "consumer" as defined by 15 U.S.C. §1692a(3).

28.     Macy's, used a predictive dialer system for all Plaintiffs.

29.     Macy's, regularly uses instrumentalities of interstate commerce and the mails to collect consumer debts owed or due or asserted to be owed or due another.

30.     The principal source of Macy's's revenue is debt collection.

31.     Macy's, is a "debt collector" as defined by 15 U.S.C. §1692a(6).

32.     As described, infra, Macy's contacted each Plaintiff to collect a debt that was incurred primarily for personal, family, or household purposes.

33.     Within the past twelve (12) months, Macy's, called each Plaintiff on multiple occasions in connection with the collection of a debt. On several occasions, within the past forty-eight (48) months, the dates of which will be discovered through discovery, Macy's, willingly and knowingly used an automatic telephone dialing system (ATDS) to call Plaintiffs on his or her cellular phone multiple times in violation of the TCPA

34.     Upon information and belief each Plaintiff, on at least one occasion, communicated his or her desire that Macy's, cease calling him or her.

35.     Not withstanding these communications, Macy's, continued to call each Plaintiff.

36.     Macy's policy and practice does not adequately address or disregards consumer's express desire that Macy's, stop calling, and each Plaintiff in this case has been harmed by this policy and practice.

37.     Macy's policies and procedures for processing account data received from original creditors, where pertinent, fail to identify easily discoverable errors and avoid the needless harassment of consumers such as Plaintiffs.

**LEGAL ARGUMENTS COMMON TO ALL PLAINTIFFS**

38.     The TCPA (at 47 U.S.C. § 227(b)(3) provides, in part:

If the court finds that the defendant willfully or knowingly violated this subsection or the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) of this paragraph.

39.     The Communications Act of 1943, of which the TCPA is a part, defines "willful"

as "the conscious or deliberate commission or omission of such act, irrespective of any intent to violate any provision[], rule or regulation...." 47 U.S.C. § 312(f).

40.    In order to establish a "willful" or "knowing" violation of the TCPA, a plaintiff need not demonstrate that the defendant intended to violate the statute, or that it knew or should have known it was violating the statute. *See Roylance v. ALG Real Est. Servs., Inc.* 2015 U.S. Dist. LEXIS 44930, *31 (N.D. Cal. Mar. 16, 2015); *Bridgeview Health Care Ctr. Ltd. v. Clark*, 2013 U.S. Dist. LEXIS 37310, *21-22 (N.D. Ill. Mar. 19, 2013); *Steward v. Regent Asset Mgmt. Solutions, Inc.*, 2011 U.S. Dist. LEXIS 50046, *18-20 (N.D. Ga. 2011).

41.    Instead, a plaintiff need only show that the defendant engaged in a "voluntary act" that violated the TCPA. *See Bridgeview*, 2013 U.S. Dist. LEXIS, at *21-22; *see also Roylance*, 2015 U.S. Dist. LEXIS, at *31 (intentionally making phone calls that violated TCPA, without intent to violate the statute, was sufficient to warrant treble damages).

## ADDITIONAL FACTORS SUPPORTING JOINDER

42.    The witness(es) that Macy's, will produce in response to a notice of deposition pursuant to Rule 30(b)(6) will likely be the same individual(s) for each Plaintiff.

43.    The information that Macy's, will provide in response to interrogatories related to Macy's policies, practices, and procedures will likely be the same, or substantially similar, for each Plaintiff.

44.    The evidence that Macy's, will produce in response to requests for production of documents related to Macy's policies, practices and procedures will likely be the same, or substantially overlap across the several Plaintiffs.

45.    Joinder will allow a single trier of fact to assess the pattern and frequency of Macy's alleged misconduct, which is a relevant factor in the legal issues and damages in this case.

46.     Joinder avoids the need to conduct multiple trials and empanel multiple juries to resolve each Plaintiffs' fairly straightforward claim that Macy's, violated the TCPA or any other asserted statute.

## FACTS SPECIFIC TO PLAINTIFF LISA CLAYTON

47.     Between and around July 2015 and April 2016, Clayton began to receive calls from several numbers; all of which are associated with Defendant. At the time Clayton filed this lawsuit he had received at least 10 calls from defendant.

48.     Defendant and/or third parties on Defendant's behalf, placed some, if not all of the calls described above using an ATDS, as defined by 47 U.S.C. § 227(a)(1) without Clayton's prior express written consent.

49.     When Clayton answered the calls, she heard short beeps, an automated message, and then was connected with a live representative.

50.     To the extent Clayton ever provided consent to be called by an ATDS, she revoked any such consent.

51.     Clayton felt the calls were an invasion of her privacy and wanted Defendant to stop calling. Defendant ignored Clayton's request and continued to call her.

52.     Based on the circumstances of the calls (e.g. dead air, etc.), Clayton believed Defendant called her cellular telephone using an ATDS that mechanically selected her number from a computer database.

53.     On information and belief, Defendant's ATDS called Clayton on every occasion.

54.     The telephone number Defendant called was assigned to a cellular telephone service for which usage minutes accumulate when calls are placed to that number.

55.     Clayton is the regular carrier and exclusive user of the cellular telephone assigned the number ending in -4595.

56.     Defendant's calls were not for emergency purposes under 47 U.S.C. § 227(b)(1)(A)(i).

57.     Calls Defendant made to Clayton violate 47 U.S.C. § 227.

58.     Clayton received all calls described above on her cellular telephone assigned a number ending in -4595.

### FACTS SPECIFIC TO PLAINTIFF LEONARIA BUTLER

59.     Around December 2016, Butler began to receive calls from several numbers; all of which are associated with Defendant. At the time Butler filed this lawsuit he had received at least 25 calls from defendant.

60.     Defendant and/or third parties on Defendant's behalf, placed some, if not all of the calls described above using an ATDS, as defined by 47 U.S.C. § 227(a)(1) without Butler's prior express written consent.

61.     When Butler answered the calls, she heard short beeps, an automated message, and then was connected with a live representative.

62.     To the extent Butler ever provided consent to be called by an ATDS, she revoked any such consent.

63.     Butler felt the calls were an invasion of her privacy and wanted Defendant to stop calling. Defendant ignored Butler's request and continued to call her.

64.     Based on the circumstances of the calls (e.g. dead air, etc.), Butler believed Defendant called her cellular telephone using an ATDS that mechanically selected her number from a computer database.

65.     On information and belief, Defendant's ATDS called Butler on every occasion.

66.     The telephone number Defendant called was assigned to a cellular telephone service for which usage minutes accumulate when calls are placed to that number.

67.     Butler is the regular carrier and exclusive user of the cellular telephone assigned the number ending in -0099.

68.     Defendant's calls were not for emergency purposes under 47 U.S.C. § 227(b)(1)(A)(i).

69.     Calls Defendant made to Butler violate 47 U.S.C. § 227.

70.     Butler received all calls described above on her cellular telephone assigned a number ending in -0099.

## FACTS SPECIFIC TO PLAINTIFF ANNETTE LIFSEY

71.     Beginning in 2016, Lifsey began to receive calls from Defendant. Since that time, Lifsey received at least two calls from Defendant.

72.     Defendant and/or third parties on Defendant's behalf, placed some, if not all of the calls described above using an ATDS, as defined by 47 U.S.C. § 227(a)(1) without Lifsey's prior express written consent.

73.     When Lifsey answered the calls, he heard short beeps, an automated message, and then was connected with a live representative.

74.     To the extent Lifsey ever provided consent to be called by an ATDS, she revoked any such consent.

75.     Lifsey felt the calls were an invasion of her privacy and wanted Defendant to stop calling. Defendant ignored Lifsey's request and continued to call her.

76.     Based on the circumstances of the calls (e.g. dead air, etc.), Lifsey believed Defendant called him cellular telephone using an ATDS that mechanically selected her number from a computer database.

77.     On information and belief, Defendant's ATDS called Lifsey on every occasion.

78.     The telephone number Defendant called was assigned to a cellular telephone service for which usage minutes accumulate when calls are placed to that number.

79.     Lifsey is the regular carrier and exclusive user of the cellular telephone assigned the number ending in -8172.

80.     Defendant's calls were not for emergency purposes under 47 U.S.C. § 227(b)(1)(A)(i).

81.     Calls Defendant made to Lifsey violate 47 U.S.C. § 227.

82.     Lifsey received all calls described above on her cellular telephone assigned a number ending in -8172.

## FIRST CAUSE OF ACTION
## ALL PLAINTIFFS
### (VIOLATION OF THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227, *ET SEQ.*)

83.     Plaintiffs hereby incorporate by reference and re-allege each and every allegation set forth in each and every preceding paragraph of this Complaint, as though fully set forth herein.

84.     The foregoing acts and omissions of Defendant constitute numerous and multiple violations of the TCPA, including but not limited to each and every one of the above cited provisions of 47 U.S.C. § 227, *et seq*. and 47 C.F.R. §64.1200, *et seq.*

85.     As a result of Defendant's violations of 47 U.S.C. § 227, *et seq*., and 47 C.F.R. §64.1200, *et seq.,* Plaintiffs are entitled to an award of $500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

13

86.     Plaintiffs are also entitled to and seek injunctive relief prohibiting such conduct in the future.

### SECOND CAUSE OF ACTION
### ALL PLAINTIFFS
#### (KNOWING AND/OR WILLFUL VIOLATION OF
#### THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227, *ET SEQ.*)

87.     Plaintiffs hereby incorporate by reference and re-allege each and every allegation set forth in each and every preceding paragraph of this Complaint, as though fully set forth herein.

88.     The foregoing acts and omissions of Defendant constitute numerous and multiple knowing and/or willful violations of the TCPA, including but not limited to each and every one of the above cited provisions of 47 U.S.C. § 227, *et seq*. and 47 C.F.R. §64.1200, *et seq.*

89.     As a result of Defendant's violations of 47 U.S.C. § 227, *et seq*., and 47 C.F.R. §64.1200, *et seq.* Plaintiffs are entitled to an award of $1,500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

90.     Plaintiffs are also entitled to and seek injunctive relief prohibiting such conduct in the future.

### JURY DEMAND

91.     Plaintiffs demand a jury trial on all issues triable to a jury.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for relief as follows:

•       An award of $500.00 in statutory damages, for each and every negligent violation, pursuant to 47 U.S.C. § 227, *et seq*.;

•       An award of $1,500.00 in statutory damages, for each and every willful and/or knowing violation, pursuant to 47 U.S.C. § 227, *et seq*.;

•       Preliminary and permanent injunctive relief enjoining Defendant, its agents,

14

servants and employees, and all persons acting in concert with them, from engaging in, and continuing to engage in, the unlawful calls made with automated dialing systems to cellular phones, and enjoining Defendant from engaging in abusive and oppressive collection practices as outlined in this Complaint.


Dated:  August 9, 2017                    Respectfully Submitted,

                                          */s/ W. Craft Hughes*
                                          W. Craft Hughes
                                          Jarrett L. Ellzey
                                          Deola T. Ali
                                          **HUGHES ELLZEY, LLP**
                                          2700 Post Oak Blvd., Ste. 1120
                                          Galleria Tower I
                                          Houston, TX 77056
                                          Phone: (713) 554-2377
                                          Fax: (888) 995-3335
                                          E-Mail: craft@hughesellzey.com
                                                  jarrett@hughesellzey.com
                                                  deola@hughesellzey.com

                                          **ATTORNEYS FOR PLAINTIFFS**


Bryant A. Fitts
**FITTS LAW FIRM, PLLC**
2700 Post Oak Blvd., Suite 1120
Houston, Texas 77056
Phone: (713) 871-1670
Fax: (713) 583-1492
E-Mail: bfitts@fittslawfirm.com

**OF COUNSEL**